**Michael B. HOYE and Carol F. Hoye, Appellants,**

v.

**SHEPHERDS GLEN LAND COMPANY, INC., Appellee.**

No. 05–87–01269–CV.

Court of Appeals of Texas, Dallas.

May 31, 1988.

Rehearing Denied July 5, 1988.

Lee Roland, Garland, for appellants.

Richard M. Hunt, Dallas, for appellee.

Before DEVANY, MCCLUNG and BAKER, JJ.

DEVANY, Justice.

Michael and Carol Hoye appeal the trial court's judgment ordering them to replace the roof on their house because the composition roof that the Hoyes installed breaches a restrictive covenant. In six points of error, the Hoyes complain that: (1) the trial court is without authority to extend a restrictive covenant to include anything not plainly prohibited; (2) the restrictive covenant is ambiguous as a matter of law; (3) the term "permanent type" is ambiguous as a matter of law; (4) there is no evidence to support the trial court's finding that "permanent type" excludes composition-type roofs; (5) the trial court's finding that composition roofs are generally not as long lasting as those roofs made of permanent type materials is against the great weight and preponderance of the evidence; and (6) the restrictive covenant is void as against public policy. Finding no merit in these

points, we affirm the judgment of the trial court.

Shepherds Glen is a residential subdivision which is regulated by restrictive covenants. The pertinent part of the covenant at issue in this case is as follows: "All roofs shall be wood shingle, slate or other permanent type." The Hoyes built a home with a roof consisting of composition shingles. Subsequently, the developers of Shepherds Glen brought this suit alleging that the composition shingle roof violated the restrictive covenant. The trial court ruled in favor of the developers and ordered the Hoyes to replace the roof on their house with one that conformed with the restrictive covenant.

■ We find it more convenient to address the points of error in reverse order. In their sixth point of error, the Hoyes complain that the restrictive covenant is void as against the public policy of this State. The Hoyes base their argument on section 5.025 of the Texas Property Code which provides:

> To the extent that a deed restriction applicable to a structure on residential property requires the use of a wood shingle roof, the restriction is void.

TEX.PROP.CODE ANN. § 5.025 (Vernon 1984).

The Hoyes claim that the only practical economic alternative for homeowners under the restrictive covenant was to use wood shingled roofs. Thus, they claim that the effect of the covenant is to allow only wood shingled roofs and, therefore, the covenant is void under the code. We disagree.

"The practical disadvantages of other alternatives to wood shingles for a structure of a particular design do not establish that the restriction in question is void." *Stergios v. Forest Place Homeowners' Association, Inc.*, 651 S.W.2d 396, 400 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). The fact that 51 of the 55 houses in the subdivision have wood shingle roofs is not proof as a matter of law that the practical effect of enforcing the covenant is to force homebuilders to use wood shingle roofs. Even if this Court were to strike out the portion of the covenant dealing with wood shingles, the Hoyes can still use "slate or other permanent type" of materials. Accordingly, the Hoyes' sixth point of error is overruled.

■ In their fifth point of error, the Hoyes complain that the trial court's finding that composition shingle roofs are generally not as long lasting as those made out of a "permanent type" material is against the great weight and preponderance of the evidence. The Hoyes assert that the trial court was including wood shingle in its definition of "permanent type" roofs, and that the testimony established that composition shingle roofs last longer than wood shingle roofs. Thus, the Hoyes argue, composition shingle roofs are as long lasting as permanent type roofs. We do not agree that the trial court included wood shingles in its findings with respect to permanent type roofs. The overwhelming evidence at trial was that wood shingles were not considered a permanent type. The testimony concerning which materials were longer lasting was quite specific in delineating between wood shingles, slate, other permanent type materials, and composition shingles. The record contains testimony by two witnesses who are knowledgeable in the roofing trade which supports the trial court's finding that composition shingle roofs are generally not as long lasting as permanent type roofs. According to the testimony, wood shingles are the least enduring material with slate and other permanent type being the longest lasting material; composition shingle roofs fall somewhere in between the two categories. Accordingly, we overrule the Hoyes' fifth point of error.

■ In their fourth point of error, the Hoyes complain that there is no evidence to support the trial court's finding that "permanent type" has a common meaning among real estate sales people and developers which excludes composition shingle roofs. At trial, Shepherds Glen called a witness with expertise in the roofing business. This witness testified that he was familiar with the terms used in the roofing

business and that, in the roofing trade, a composition shingle roof is not considered a permanent type material. The witness further testified to the meaning of the term "permanent type" in the roofing trade which term excludes composition shingles. This testimony constitutes some evidence to support the trial court's finding. Consequently, the Hoyes' fourth point of error is overruled.

In their second and third points of error, the Hoyes complain that the restrictive covenant is ambiguous and, specifically, the term "permanent type" is ambiguous as a matter of law. Generally, a person seeking to establish ambiguity under a written agreement must specifically plead such ambiguity. *Covered Bridge Condominium Association, Inc. v. Chambliss*, 705 S.W.2d 211, 214 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The party must set out that part of the written agreement that is allegedly ambiguous and plead his or her meaning or construction of the same. *Jones v. Dumas Development Company*, 229 S.W.2d 936, 939 (Tex.Civ. App.—Amarillo 1950, writ ref'd n.r.e.). *See also, Sale v. Contran Corporation*, 486 S.W.2d 161, 165 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). The Hoyes failed to plead ambiguity in any respect, and thus the issue is not properly before this Court. The Hoyes' second and third points of error are overruled.

In their first point of error, the Hoyes complain that the trial court erred in ordering them to replace the roof of their house because the court is without authority to extend the prohibitions of a restrictive covenant to include something that is not expressly prohibited. As stated in the Hoyes' brief, this case revolves around the construction of one sentence: "All roofs shall be wood shingle, slate or other permanent type." The issue is whether composition shingle roofs are included in the permissible types of roofs under the restrictive covenant. It is obvious that composition shingles are not wood shingles or slate. Thus, our inquiry is limited to whether composition shingle roofs are included in the category of "other permanent type."

Both parties tried the case as though the covenant was unambiguous; however, each party asserted different interpretations. The Hoyes contend that the term "permanent," as used in the covenant, is defined as a certain period of time. They further contend that the term "wood shingle" modifies "other permanent type" and is just an example of an allowable permanent type. Thus, the argument follows that since composition shingle type roofs generally last longer than wood shingle roofs, then composition roofs are also included in the definition of "other permanent type" and are plainly not prohibited. We do not agree that this is a plain reading of the covenant and, as set forth in point of error five, the evidence at trial does not support this interpretation.

It is well settled that, absent a claim of ambiguity, the intention of the parties imposing a covenant is to be ascertained from the language of the covenant itself construed in connection with the surrounding circumstances. *Scott v. Rheudasil*, 614 S.W.2d 626, 629 (Tex.Civ.App.—Fort Worth 1981, no writ). Viewing the evidence with this standard in mind, the interpretation of the covenant by the Hoyes fails for two reasons. First, the Hoyes mistakenly use the term "permanent" out of context. The restrictive covenant is concerned with the type of *roofing materials* that are permissible to use in the subdivision. "Permanent type" suggests a specific meaning in the context of roofing materials. The Hoyes assert that the dictionary provides the proper definition for the term "permanent" as used in the restrictive covenant: continuing or enduring without fundamental or marked change. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1985). We disagree that a roof can fall under this definition of "permanent" since all roofs change markedly over time. Evidence was introduced at trial that "permanent type" has a specific meaning in the roofing trade and that it is this meaning that was intended by the parties and should guide us in interpreting the covenant.

The Hoyes ignore the evidence presented at trial that wood shingles are not con-

sidered permanent type. Thus, as testified to by the developer, the term "wood shingles" was not intended to be a modifier of the phrase "other permanent type," but rather a type of roof allowable separate and apart from permanent types. Taking this evidence together with the fact that permanent type entails a specific class of materials, the only issue remaining is whether a composition roof falls under the parties intended definition of "other permanent type."

The language of the covenant, together with the surrounding circumstances of its creation, show that composition roofs are not included in the term "other permanent types." The testimony indicates that Shepherds Glen subdivision was intended to be a prestigious subdivision. The purpose of all the restrictive covenants is to preserve the natural beauty of the subdivision and to preserve the view and aesthetic appeal of each lot site. The testimony at trial was uncontradicted that composition shingle roofs create a less prestigious appearance than other types of material and can affect the subdivision in the real estate market. Therefore, since composition shingle roofs are considered less enduring than other types of materials allowed in the covenant, other than wood shingles which are specifically allowed, and have a less appealing appearance, they are considered as a type apart from permanent materials in the roofing trade. In construing the language of the covenant in light of the surrounding circumstances that were presented at trial, we hold that composition shingle roofs were intended to be included in the prohibitions of the restrictive covenant. The Hoyes' first point of error is overruled.

Although not crucial to the holding of this case, it is noteworthy that the Hoyes were informed by the developer after having submitted their plans for approval, which is required under the deed restrictions, that the composition shingle roof contained in their plans was a violation of the restrictive covenant. Nevertheless, the Hoyes did not change their plans and chose to build the home with a composition shingle roof.

The judgment of the trial court is affirmed.