No. 66,154

LINN VALLEY LAKES PROPERTY OWNERS ASSOCIATION, A Kansas Corporation, *Appellant,* v. WILBUR N. BROCKWAY and LOIS I. BROCKWAY, *Appellees.*

(824 P.2d 948)

Opinion filed January 17, 1992.

*J. Darcy Domoney,* of Winkler, Lee, Tetwiler & Domoney, of Paola, argued the cause and was on the briefs for appellant.

*John W. Cole,* of Anderson, Byrd, Richeson & Flaherty, of Ottawa, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

MCFARLAND, J.: This is an action to enforce a restrictive covenant prohibiting signs on the subject property both within and without any buildings thereon. The district court entered summary judgment in favor of the defendant landowners on the ground that enforcement of the covenant would be violative of the First Amendment to the United States Constitution and § 11 of the Bill of Rights of the Kansas Constitution. On appeal, the Court of Appeals held the district court erred in such determination and reversed the entry of summary judgment. The case is before us on petition for review.

By virtue of the posture of the case herein at the time of the entry of the summary judgment, very few evidentiary facts are contained in the record. The defendants Wilbur N. and Lois I. Brockway are owners of two contiguous lots in Linn Valley Lakes, a private real estate development situated in Linn County, Kansas. The Brockways placed a double-wide mobile home on the property, which is their principal residence. In 1989, the Brockways decided to sell their lots and listed the same with a realtor,

placed advertisements in periodicals, and placed an 8- by 10-inch "for sale" sign in a window of their mobile home.

The Brockways purchased their lots subject to the developer's Declaration of Covenants and Restrictions, which contained the following restriction (Art. III, Sec. 1): "No signs may be placed or maintained on any Lot, nor on or within any building, except in an area approved for commercial use."

Plaintiff Linn Valley Lakes Property Owners Association (Association) is a nonprofit corporation established by the developer, Linn Valley Lakes, a Kansas Limited Partnership, for the purpose of enforcing said covenants and restrictions. The Association demanded the Brockways remove the sign. The Brockways refused to do so. The Association then filed the action herein seeking a temporary restraining order and a permanent injunction requiring removal of the sign. As previously stated, the district court entered summary judgment on the grounds enforcement of the restrictive covenant would be violative of the Brockways' constitutionally protected rights to free speech. The Court of Appeals reversed the district court's entry of summary judgment in an unpublished opinion filed July 19, 1991. Only a very narrow issue is presented in this appeal—the propriety of the entry of summary judgment in favor of the Brockways on the aforestated constitutional grounds.

In *McColm v. Stegman*, 3 Kan. App. 2d 416, 419-20, 596 P.2d 167 (1979), the law relative to the enforcement of restrictive covenants was summarized as follows:

"The enforceability of restrictive covenants has its origin in common law and has long been recognized in the State of Kansas. *Tulk v. Moxhay*, 2 Ph. 774, 41 Eng. Rep. 1143 (1848); *Godfrey v. Black*, 39 Kan. 193, 17 Pac. 849 (1888). Restrictions or equitable servitudes are based on the equitable principle of notice whereby a person who takes land with notice of a restriction upon it will not be permitted to act in violation of it. *Hecht v. Stephens*, 204 Kan. 559, 464 P.2d 258 (1970); *Reeves v. Morris*, 155 Kan. 231, 124 P.2d 488 (1942). The use of equity to enforce covenants restricting the use of property is not absolute, and the right may be lost by laches, waiver or acquiescence in the violation of such restrictions. *N. P. Dodge Corp. v. Calderwood*, 151 Kan. 978, 101 P.2d 883 (1940). In addition, violations of restrictive covenants within the restricted area are relevant, and equitable enforcement may be denied when there has been a change in conditions so radical in nature as to neutralize the benefits of the re-

strictions and destroy their purpose. *Clark v. Vaughan*, 131 Kan. 438, 292 Pac. 783 (1930)."

The *McColm* case then cited *Holmquist v. D-V, Inc.*, 1 Kan. App. 2d 291, 296, 563 P.2d 1112 (1977), for the following:

"The granting of an injunction is equitable in nature and involves the exercise of judicial discretion. 'Whether injunctive relief will be granted to restrain the violation of a restrictive covenant is a matter within the sound discretion of the trial court to be determined in light of all the facts and circumstances. Absent manifest abuse of that discretion, an appellate court will not interfere.' [Citations omitted.]

"No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, and each case must be decided on the equities of the situation presented. A number of factors may be considered including, but not limited to, the purpose for which the restrictions were imposed, the location of the restriction violations, the type of violations which have occurred, and the unexpired term of the restrictions. [Citations omitted.]"

See also *Kennedy v. Classic Designs, Inc.*, 239 Kan. 540, Syl. ¶ 2, 722 P.2d 504 (1986):

"Restrictive covenants have long been recognized in Kansas and a person who takes real property with notice of restrictions upon it will not be permitted to act in violation thereof. Such restrictions are enforceable through the equitable remedy of injunction."

And *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, Syl. ¶¶ 1, 2, 3, 4, 5, 549 P.2d 1035 (1976):

"Restrictive covenants are to be construed in accordance with the intent and purpose of the grantor after examination of the entire instrument under consideration."

"Whether injunctive relief will be granted to restrain the violation of a restrictive covenant is a matter within the sound discretion of the trial court to be determined in light of all the facts and circumstances. Absent manifest abuse of that discretion, an appellate court will not interfere."

"Covenants concerning the use of real estate will be enforced by equity only so long as they remain reasonable in the light of their purpose, taking into account changes in relevant conditions since the time they were made."

"To warrant refusal of equitable relief, the change in conditions must be so great and radical as to neutralize the benefits of the restriction and destroy its purpose."

"The rule that the right to enforce a restrictive covenant may be lost by laches, waiver, or acquiescence is not an absolute one. Mere acquiescence will not bar enforcement so long as a restriction remains of any value or absent a showing that it would be inequitable to enforce the restriction."

The Association contends that the restrictive covenant in question is valid and binding upon the Brockways and that it is entitled to enforcement thereof under long existing Kansas law.

The Brockways contend that enforcement thereof would constitute state action violative of their constitutional rights to freedom of speech. In support thereof they rely on *Shelley v. Kraemer*, 334 U.S. 1, 92 L. Ed. 1161, 68 S. Ct. 836 (1948). At issue therein was a restrictive covenant which banned occupancy of the subject property by persons not of the Caucasian race. The United States Supreme Court held that enforcement of such a covenant would constitute state action denying civil rights to a person solely because of race, religion, color, or national origin and, hence, be violative of the Fourteenth Amendment.

The Brockways contend that enforcement of the no-sign covenant would constitute state action under *Shelley* which would deny them their constitutionally protected right of free speech. In essence, they argue that the test to be employed is whether a valid ordinance could be passed prohibiting the conduct proscribed in the restrictive covenant. If the answer is no, then the covenant cannot be enforced. This rationale would effectively bar enforcement of virtually any restrictive covenant, including agreements as to architectural style, residence size, fencing, etc. We believe this is an overly broad interpretation of *Shelley*.

The factual background in *Shelley* is important. The Shelleys were black people who had purchased property subject to the restrictive covenant. Other landowners brought an action to divest the Shelleys of their title and return it to the seller. The Shelleys had no prior actual knowledge of the restrictive covenant. *Shelley*, 334 U.S. at 5. The thrust of the *Shelley* opinion is that enforcement of the covenant would defeat the Shelleys' civil rights to own property based solely upon their race. Enforcement of this particular covenant was held to be state action infringing upon the Shelleys' constitutional right to own property.

The case before us is easily distinguished. The covenant in question places a limitation on the use of the property by the landowners. There is nothing constitutionally impermissible per se in a private agreement restricting signs in a residential neighborhood, and enforcement thereof does not constitute improper

state action. We conclude the district court erred in entering summary judgment herein on constitutional grounds.

The case should be tried on its merits. All relevant facts and circumstances should be considered by the district court in determining whether or not equitable relief should be granted enforcing the restrictive covenant as to the particular sign at issue herein.

The judgment of the Court of Appeals is affirmed. The judgment of the district court is reversed.