**Tiffany ADAMS, a minor child, By and Through her natural mother, Cyndi ADAMS, Plaintiff,**

v.

**Karen BAKER, Virginia Boyd, Tom Lipke, Mike Logue, Roger Maris, Janet Robinson, Darrell Schooler, Bob Neel, (each individually) and Kansas U.S.D. # 262, Defendants.**

**Civil A. No. 95–1508.**

United States District Court, D. Kansas.

Feb. 2, 1996.

1498

Charles A. O'Hara, O'Hara, O'Hara, & Tousley, Wichita, KS, for Cyndi Adams, natural mother of a minor child Tiffany Adams.

Alan L. Rupe, Morrison & Hecker L.L.P., Wichita, KS, Calvin D. Rider, Brown, Dengler, Good & Rider, L.C., Wichita, KS, for Unified School District No. 262, Valley Center, Kansas.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on plaintiff's motion for a preliminary injunction. (Doc. 2). Plaintiff, Tiffany Adams, filed this action under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.*, alleging that the defendant school district had violated her right to equal protection by refusing to allow her to try out for the Valley Center High School wrestling team because of her gender. Plaintiff seeks injunctive relief and money damages. The court held a hearing on December 5-6, 1995, at which evidence was presented concerning the school's decision to prohibit girls from participating on the high school wrestling team. At the close of the hearing, the court issued a temporary restraining order requiring the defendants either to permit the plaintiff try out for the wrestling team or to discontinue its wrestling program for male students. The order has been extended three times by consent of the parties,[1] and is set to expire on February 2, 1996.

## FINDINGS OF FACT

1. Plaintiff, Tiffany Adams, is a fifteen-year-old female. She is a freshman at Valley Center High School, which is the only high school in U.S.D. # 262. The defendants in this case are the school district, members of the Valley Center school board and the superintendent of the district, Bob Neel. (Testimony of Tiffany Adams, Bob Neel). Witnesses at the hearing included Valley Center High School's principal, Howard Moon, and wrestling coach, Carl Konecny.

2. Valley Center High School offers fifteen sports for student participation. Boys may participate in football, soccer, basketball, wrestling, tennis, and baseball. Volleyball, soccer, tennis, basketball, softball, and cheerleading are available for girls. There are also coed track, cross country and golf teams. (Testimony of Howard Moon). The percentage of girls participating in sports at Valley Center High School over the last eight years has been roughly proportionate to the percentage of female students at the school. (Defendants' Exhibit 2). Female participation in sports is slightly lower than male participation if cheerleading is not counted. (Defendants' Exhibit 3).

3. Last school year, while in the eighth grade, plaintiff was a member of the Valley Center Junior High School wrestling team. Plaintiff compiled a record of five wins and

---

1. The temporary restraining order was extended because it appeared the matter would be resolved without further court proceedings, but it now appears a settlement is not imminent. Nevertheless, the case seems to be appropriate for settlement as the claim for injunctive relief is the meat of the case, and the economic damages are limited to attorney fees, which, the court notes, a delay would only serve to increase.

three losses. Three of the wins came by forfeit because some boys refused to compete against a girl in wrestling. Plaintiff lost one match to another female wrestler. (Testimony of Cyndi Adams, Tiffany Adams, Carl Konecny).

4. This school year plaintiff sought to try out for the high school wrestling team, but was prohibited from doing so. The only reason given for refusing to allow plaintiff's participation is her gender. (Testimony of Cyndi Adams, Tiffany Adams).

5. Carl Konecny was plaintiff's coach last year and is her coach again this season. Aside from the forfeits and a general apprehensiveness expressed in the coach's testimony, the record reflects no problems with plaintiff's participation on the wrestling team last season. Konecny did testify that by the end of the season, plaintiff did not perform as well as others on the team. (Testimony of Carl Konecny).

6. Konecny testified that some of plaintiff's teammates last season did not volunteer to wrestle with plaintiff during practice. However, at least one boy did agree to practice with plaintiff. (Testimony of Carl Konecny).

7. Konecny testified that he did not demonstrate any wrestling holds on plaintiff last season. However, due to a knee injury, he was unable to demonstrate holds on other members of the team. (Testimony of Carl Konecny).

8. Konecny testified that the sport of wrestling is different at the junior high school and senior high school levels. These differences include the competitive attitude, the teaching of more advanced moves/holds, and the strength, endurance, ability, and experience of the participants. (Testimony of Carl Konecny).

9. Konecny testified to problems that a male coach has with coaching a female wrestler. Konecny testified that sometimes there are enough boys at a wrestling meet that the boys must use both the boys' and girls' locker rooms. Konecny testified that treating injuries may involve touching the arms or chest area. Nevertheless, Konecny coached plaintiff last season and testified that he would be able to do so this season. (Testimony of Carl Konecny).

10. Konecny testified that he was concerned for plaintiff's safety because of a difference in lifting ability. On average, a high school boy who weighs 145 pounds can bench press over 200 pounds. Last year during the off-season, plaintiff could bench press only 120 pounds. However, there was no evidence regarding what weight plaintiff can lift now or what she would be able to do after conditioning. Furthermore, there was testimony that some boys are not as strong as others, and there was no evidence that boys are required to demonstrate the ability to lift over 200 pounds in order to try out for the wrestling team. (Testimony of Carl Konecny).

11. Konecny testified that the sport of wrestling involves a risk of injury. He related that at a recent varsity meet, one boy bled from a cut above his eye. Another landed on his head and was knocked unconscious. Konecny did not believe, however, that such injuries are more serious to girls than to boys. (Testimony of Carl Konecny).

12. Konecny agreed on cross-examination that an athlete is an athlete regardless of gender, that education is about the opportunity to try new things and even to fail, and that a person should not, on the basis of gender, be denied educational opportunities. (Testimony of Carl Konecny).

13. Konecny testified that wrestling requires tremendous conditioning, including running and lifting weights. Konecny agreed that girls can perform these activities. Konecny testified that an individual girl may be stronger than an individual boy. Konecny admitted that it is possible that the best wrestler in the state is a girl, and he agreed that her gender should not preclude her from competing. (Testimony of Carl Konecny).

14. Evidence was presented that there are over 800 girls competing in wrestling in the United States. (Plaintiff's exhibit C). Konecny testified that his team has this season competed against other teams with female participants. (Testimony of Carl Konecny).

15. No boys have quit the Valley Center High School wrestling team because of female participation in the sport, although some have threatened to quit. Likewise, team members have not forfeited matches against female opponents. Konecny did not remember any complaints from parents last season. (Testimony of Carl Konecny).

16. Plaintiff's mother, Cyndi Adams, testified concerning her daughter's participation in wrestling. She testified that plaintiff encountered no problems of harassment or parental complaints when wrestling last year. (Testimony of Cyndi Adams).

17. Plaintiff did not suffer any physical injuries last year, beyond bruises and minor cuts. (Testimony of Tiffany Adams).

18. Wrestling meets consist of matches between individual competitors. The decision of who wrestles whom is based on weight class. Within a given weight class, coaches try to pair up wrestlers according to their ratings. Therefore, Tiffany Adams, as a freshman wrestler, could potentially wrestle against seniors, who would have more experience. However, nothing in the record suggests that boys are not called to wrestle against more experienced competitors or that the lack of experience poses a particular danger to females. Furthermore, the coaches would endeavor to match her with an opponent of equivalent rating. (Testimony of Carl Konecny).

19. Last school year, the Valley Center school district operated without a superintendent. Bob Neel became superintendent in July 1995. Neel described his duty as supervising all aspects of the school district. Neel testified that the school board sets district policies. (Testimony of Bob Neel).

20. Neel testified that he became aware of Tiffany Adams' desire to participate in wrestling at the beginning of the school year. At a school board meeting, parents commented on the situation and requested that the board restrict participation in wrestling to boys. The parents cited moral and safety concerns with coed wrestling. The board took no action on the request. (Testimony of Bob Neel).

21. On November 16, 1995, the matter was taken up by the school board, but a motion to have only single-sex wrestling resulted in a tie vote. One board member was absent. (Testimony of Bob Neel).

22. After the meeting, Neel talked to parents and the district's attorneys and looked at Title IX. (Testimony of Bob Neel). Neel made the final decision not to allow plaintiff to wrestle after determining that Title IX does not require coed participation in contact sports. Neel sent a memorandum to Howard Moon, the Valley Center High School principal, instructing him to permit only boys to wrestle at the high school, to continue efforts to form a girls wrestling program, and to encourage any girl wishing to wrestle to try out for the sports offered to girls. (Defendant's Exhibit 1).

23. Neel testified that in deciding to prohibit plaintiff from trying out, he considered several factors: parents' moral objections; the possibility of sexual harassment lawsuits; plaintiff's safety; that state law and Title IX do not require coed wrestling; and disruption of the school setting. (Testimony of Bob Neel).

24. Neel testified that some parents had expressed moral objections to a girl wrestling on a boys team. Specifically, parents believed the sport involves "improper touching" when between members of different genders. However, Neel acknowledged that wrestling is a sport rather than a sexual activity and that there are rules to be followed and officials present at matches to uphold those rules. Some parents were also concerned that from wrestling girls, their boys would learn to dominate women. The court finds that this is a pretextual concern and is itself based on the generalizations about the relative physical strength of males and females.[2] Nevertheless, Neel testified that he did not base his decision on moral considerations. (Testimony of Bob Neel).

25. As for sexual harassment lawsuits, Neel testified that he was concerned because

2. Specifically, the belief that a boy, by competing against a female wrestler, would learn to dominate women is based on the assumption that the boy would win.

wrestling involves a great deal of physical contact. Neel considered the coach's exposure to liability. However, as stated above, wrestling is not a sexual activity. Neel admitted that a coach's duty is to teach the athlete. Furthermore, males coach females in other sports which also involve physical contact, particularly to teach certain skills or moves, and Neel was aware of no lawsuits arising out of those situations. (Testimony of Bob Neel).

26. Neel testified that he considered the plaintiff's safety. Neel admitted that boys are sometimes hurt wrestling and that some boys are more frail than others. Neel's opinion that plaintiff is not as strong as the boys on the team is based on generalities regarding the relative strength of boys and girls, rather than on an individualized assessment of plaintiff's strength or ability. (Testimony of Bob Neel).

27. There is no evidence that plaintiff suffered more than minor injuries last season. There was testimony that because plaintiff could be competing against eighteen-year-old boys this season, she may be at greater risk of injury. However, because wrestling matches are based on weight class, plaintiff would not be wrestling boys who are significantly larger than her. Plaintiff could potentially face an opponent who, as a senior, would be more experienced, but there is no reason to believe this would be more likely or more dangerous for a freshman girl than for a freshman boy. (Testimony of Bob Neel, Carl Konecny).

28. Neel testified that he researched Title IX and the relevant regulations and believed that the decision to prohibit coed wrestling was legally justifiable. (Testimony of Bob Neel). The court will address Title IX in the Conclusions of Law below.

29. Finally, Neel testified that he believed allowing girls to participate in wrestling could lead to disruption of the school setting. However, he had no knowledge of any such disruption when plaintiff wrestled last season. Neel testified that the boys participating in wrestling had rights which

should be considered. However, he admitted that among those is not the right to choose their opponents, particularly based on discriminatory reasons. (Testimony of Bob Neel).

30. Howard Moon, the Valley Center High School principal, testified that he believed disruption of the wrestling program could result from plaintiff's participation because the boys could be embarrassed or humiliated or refuse to participate. Moon testified that a boy might be humiliated if he lost a match to a female opponent. (Testimony of Howard Moon).

31. Plaintiff filed the instant action and moved for a temporary restraining order and preliminary injunction. (Doc's 1 & 2). The court held an evidentiary hearing on December 5 and 6, 1995. On December 6, 1995, this court issued a temporary restraining order requiring the school district to (1) allow the plaintiff to try out for and/or participate in wrestling or (2) discontinue the wrestling program at Valley Center High School.[3] (Doc. 4).

32. Plaintiff testified that she enjoys other sports, including soccer and barrel racing, but that she did not wish to try out for basketball, which is the only sport offered during the winter months to female students at Valley Center High School. (Testimony of Tiffany Adams).

33. Plaintiff testified that she wants to wrestle because she likes the sport and she appreciates the self-discipline it teaches and that she only wished for the chance to try out for the team on an equal basis. (Testimony of Tiffany Adams). a) By the time of the hearing on this matter, the plaintiff had already missed a number of practices and one wrestling meet. (Testimony of Carl Konecny). The plaintiff testified that there is no way to make up for the lost practice time and lost opportunity to compete that has already been caused by the district's prohibition. (Testimony of Tiffany Adams).

---

**3.** A third option would be to form a girls wrestling team, but that option was not feasible at the time the temporary restraining order was issued, and the court has no further evidence to suggest it would now be feasible.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the subject matter pursuant to 28 U.S.C. § 1343 and § 1331. The court has jurisdiction of the parties. Venue is proper in this district. 28 U.S.C. § 1391(b).

■ 2. A party seeking a preliminary injunction must establish (1) a substantial likelihood that it will prevail on the merits; (2) that it will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the moving party outweighs whatever damage the proposed injunction will cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980).

■ 3. The function of a preliminary injunction is to preserve the status quo pending trial on the merits. *Amoco Oil Co. v. Rainbow Snow,* 748 F.2d 556, 557 (10th Cir. 1984); *Lundgrin,* 619 F.2d at 63.

■ 4. The grant or denial of a preliminary injunction lies within the sound discretion of the trial court. *Rainbow Snow,* 748 F.2d at 557.

*I. Likelihood of Success on the Merits*

5. Title IX of the Education Amendments Act of 1972 provides, in part, that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...." 20 U.S.C. § 1681(a).

6. 34 C.F.R. § 106.41 deals specifically with athletic programs. Under § 106.41(b),

> where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport involved is a contact sport.

Wrestling is, not surprisingly, defined as a contact sport. 34 C.F.R. § 106.41(b).

■ 7. Because wrestling is a contact sport, Title IX does not require that Valley Center High School allow a female to try out for the boys wrestling team. Therefore, plaintiff is unlikely to succeed on her Title IX claim.

■ 8. The court turns to the plaintiff's claim of deprivation of equal protection brought under 42 U.S.C. § 1983. Defendant first argues that a § 1983 claim is not viable in this situation because Congress established a comprehensive remedial scheme for equal protection violations in the context of school programs by enacting Title IX. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981) ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate a congressional intent to preclude the remedy of suits under § 1983."). The court disagrees that the rule announced in *Sea Clammers* applies in this case. Although Congress may specify remedies available for a violation of a federally protected right, Congress cannot thereby substantively limit constitutional rights. Title IX does not simply limit the remedies available for equal protection violations in the context of school athletic programs. Rather, it actually defines equal opportunity, and the definition provided under Title IX is substantively different than the definition of equal protection, as set forth by the controlling case law.

■ 9. Plaintiff bases her § 1983 claim on an allegation of deprivation of equal protection as guaranteed by the fourteenth amendment to the United States Constitution. It is undisputed that the defendants seek to deny the plaintiff the opportunity to participate in wrestling on the basis of gender. A party seeking to uphold a classification based on gender carries the burden of showing an "exceedingly persuasive justification" for the classification. *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 723, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982). Gender based discrimination is permissible only where the discrimination is "substantially related" to the achievement of "important governmental objectives." *Id.*

In this case, the defendants identified several rationales behind the decision to prohibit girls from wrestling at Valley Center High School. The reasons given were safety, fear of sexual harassment litigation, potential disruption of the school setting, student and parent objections based on moral beliefs, and a variety of inconveniences.

10. The court concludes that the last two rationales do not constitute "important governmental objectives" in this case. The school district certainly does not consider itself subject to every parental complaint or whim. Furthermore, it is not the duty of the school to shield students from every situation which they may find objectionable or embarrassing due to their own prejudices. The defendants also identified potential problems with coaching techniques, availability of locker room facilities and other inconveniences. However, the district's interest in avoiding such trivial problems is hardly an important governmental objective. At any rate, according to the testimony of the defense witnesses, these problems could be overcome with minimal effort.

11. The court agrees that student safety is an important governmental objective. *Saint v. Nebraska School Activities Assn.,* 684 F.Supp. 626, 628 (D.Neb.1988), *Force v. Pierce City R–VI Sch. Dist.,* 570 F.Supp. 1020, 1022 (W.D.Mo.1983). However, the district's policy of prohibiting females from wrestling is not substantially related to that objective. The defendants' only evidence that plaintiff's safety is at greater risk because of her gender is based on generalized assumptions about the differences between males and females regarding physical strength. *See Force,* 570 F.Supp. at 1030. The evidence shows that some females are stronger than some males. The school can take into account differences of size, strength, and experience without assuming those qualities based on gender. Furthermore, there was evidence presented of injuries boys have sustained while wrestling, and it is certainly improper to subject boys to greater danger than girls. As the court stated in *Force,* the defendants' safety arguments "suggest the very sort of well-meaning but overly 'paternalistic' attitude about females which the Supreme Court has viewed with such concern." *Id.* at 1029.

12. Likewise, a school district has an interest in avoiding sexual harassment litigation. However, prohibiting female participation in activities is not substantially related to that goal. The evidence before the court stated the obvious, that wrestling is an athletic activity and not a sexual activity. There is no reason to suspect that girls who seek to join the wrestling team would be likely to mistake the contact which is inherent in the sport for sexual misconduct. A school district best avoids sexual harassment litigation by acting to prevent sexual harassment rather than excluding females from participating in activities.

13. Finally, the court concludes that the defendants' actions are not substantially related to the goal of avoiding disruption of the school setting. According to the defense witnesses' testimony, there was no such disruption when plaintiff wrestled last year. Furthermore, the only evidence of potential disruption this year is the suggestion that some boys may quit the wrestling team if plaintiff is allowed to participate, which the court concludes does not really constitute disruption of the school setting at all. A gender-based classification simply is not necessary to keep Valley Center High School running smoothly.

14. In sum, the plaintiff has shown that she is likely to succeed on the merits of her § 1983 claim based on equal protection. The court does not address plaintiff's claims based on the first amendment and 42 U.S.C. § 1985(3).

## II. *Irreparable Injury*

15. Although plaintiff seeks money damages as well as injunctive relief, the court rejects the defendant's contention that this is dispositive on the issue of irreparable harm.

16. Without temporary injunctive relief, plaintiff would miss more opportunities to compete, practice, and learn the sport of wrestling. Such missed opportunities would cause her to fall behind in her development as an athlete and would quite probably, as a

practical matter, prevent her from being able to compete in the future. The defense witnesses testified at the hearing that plaintiff, as a freshman, is inexperienced compared to some of the boys on the Valley Center team and other teams, some of whom are seniors. If not allowed to participate this season, the boys in her own class will gain experience relative to the plaintiff.

17. Furthermore, the plaintiff has alleged deprivation of her constitutional rights. Where such allegations are made, no further showing of irreparable harm is required. *Saint,* 684 F.Supp. at 628. A deprivation of a constitutional right is, itself, irreparable harm.

### III. Balance of the Hardships

18. Again, the only hardship defendants have alleged relate to accommodating a female wrestler's need for a place to change, differences in coaching techniques, and the like. These problems were overcome last year without major difficulties, and the court is confident that the same coach can find solutions to problems as they arise this year. The court concludes, therefore, that a preliminary injunction would pose minimal hardship to the defendants and that any such hardship is outweighed by the irreparable injury that plaintiff would suffer if not allowed to participate.

### IV. Public Interest

19. The defendant has not argued that granting the plaintiff's motion for preliminary injunction would be harmful to the public interest.

20. The public interest would best be served by enjoining the defendants from infringing on the plaintiff's right to equal protection. *Saint,* 684 F.Supp. at 630.

### CONCLUSION

The court finds that all factors to be considered in determining whether a preliminary injunction should be issued have been met by the plaintiff. Plaintiff has established a substantial likelihood of success on the merits by showing that prohibiting her from participating in wrestling on the basis of gender does not significantly advance a substantial government interest. To deny a preliminary injunction would cause plaintiff irreparable injury in lost practice time and competitive opportunities, as well as the injury inherent in a denial of constitutional rights. It is highly unlikely that the defendant will suffer any damage because of the injunction, and any such damage is outweighed by the potential harm to the plaintiff. The public interest also favors granting the injunction as the public as a whole has an interest in protecting constitutional rights.

Federal Rule of Civil Procedure 65(c) provides that a bond must be posted by the applicant for a preliminary injunction as a prerequisite to the issuance of the preliminary injunction. Nevertheless, the court may, within its discretion, waive the bond requirement. *See Coquina Oil Corp. v. Transwestern Pipeline Co.,* 825 F.2d 1461, 1462 (10th Cir.1987) (decision to waive bond reviewable under abuse of discretion standard). In this case the court waives the bond requirement based on the strength of plaintiff's case and the minimal damages which defendants would suffer as a result of the preliminary injunction.

**IT IS BY THIS COURT THEREFORE ORDERED** that plaintiff's motion for preliminary injunction (Doc. 2) is hereby granted. The defendants are hereby preliminarily enjoined from denying the plaintiff, on the basis of gender, the opportunity to participate in wrestling at Valley Center High School.

**IT IS FURTHER ORDERED** that the bond requirement under Fed.R.Civ.P. 65(c) is hereby waived.