**Laura MEASE and Marty Mease, Members of the SaddleBrooke Homeowners' Association, Plaintiffs,**

v.

**CITY OF SHAWNEE, Johnson County, Kansas, Defendant.**

**Civil Action No. 03–2041–CM.**

United States District Court, D. Kansas.

May 22, 2003.

Michael J. Abrams, Lathrop & Gage L.C., Kansas City, MO, W. Joseph Hatley, Tammy M. Somogye, Lathrop & Gage L.C., Overland Park, KS, for Plaintiffs.

Chad E. Humble, Marvin E. Rainey, Rainey & Rainey, Shawnee Mission, KS, for Defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

On January 24, 2003, plaintiffs filed a Verified Petition and Motion for Restrain-

ing Order against defendant City of Shawnee (the City) in Johnson County District Court seeking, among other things, an order enjoining the City from enforcing certain municipal ordinances (the Ordinances [1]) pertaining to deed restrictions governing the SaddleBrooke subdivision. On that same date, the Honorable Thomas E. Foster issued a Restraining Order enjoining the City from enforcing the Ordinances as to the deed restrictions. The City thereafter removed the case to federal court, whereupon this court issued a Temporary Restraining Order (Doc. 14) enjoining the City from enforcing the Ordinances. On April 1, 2003, this court held a hearing, at which time the court took plaintiffs' Motion for Temporary Restraining Order under advisement. Based upon the evidence submitted at the hearing on this matter, the court now rules on plaintiffs' Motion for Preliminary Injunction (Doc. 4).

● Facts

Plaintiffs reside in the SaddleBrooke Subdivision located in Shawnee, Kansas, and are members of the SaddleBrooke Homeowners' Association. The value of homes in SaddleBrooke ranges between $300,000 and $750,000. The City is a municipal corporation within the State of Kansas. On May 24, 1993, the SaddleBrooke Subdivision filed with the Johnson County Register of Deeds a Declaration of Restrictions for the subdivision (the Restrictions). The restrictive covenant at issue in this case (the Roofing Restriction) reads as follows:

> Roofs shall be covered by cedar shakes, slate or concrete tile and shall have a minimum roof pitch of 5 on 12. No asphalt shingle, gravel or tar roofs are allowed. No flat roofs are allowed.

1. As set forth in more detail below, "the Ordinances" refer collectively to Ordinance Nos. 2625 and 2655.

At the time the Restrictions were filed, there were no city ordinances requiring deed restrictions to allow the use of particular roofing materials.

On August 26, 2002, the City passed Ordinance No. 2625, amending its building code, which in part provided:

It shall be unlawful to establish or enforce a restrictive covenant which permits the use of either wood shingles, wood shake, tile or slate, but no other Class C roof material on a residential dwelling within the City. Any such restrictive covenant is contrary to the public policy of the City and is null and void.

Then, on January 13, 2003, the City passed Ordinance No. 2655 amending Ordinance No. 2625, to read:

It shall be unlawful to establish or enforce a restrictive covenant which permits the use of wood shingles or wood shake shingles or any other unrated roofing material on a residential dwelling within the City unless the restrictive covenant also permits as an alternative the use of a Class A, B or C rated asphalt shingle, also known as composition roofing material. Any such aforedescribed restrictive covenant is contrary to the public policy of the City and is null and void.

The City incorporated eleven findings of fact supporting the passage of the Ordinances, the most relevant of which is as follows:

The use of wood shingle, wood shake shingle, or other roofing materials less than Class C rated presents a substantial threat to the public safety from the increased risk of fire and the potential for, under certain conditions, the spreading of fire to neighboring property, thereby placing lives and property at increased risk of harm.(Ordinance No. 2655 Findings of Fact). The City also found:

While some restrictive covenants may permit the use of tile or slate materials in lieu of wood, use of these materials costs substantially more than other Class C or better roofing material.... Increasing the number of residences with roofing material that has less risk of fire than does wood will result in less fire damage to property or to persons within the City, will reduce the economic loss caused by fire and will reduce the demand on the City's Fire Department and other public safety officials.... Restrictive covenants that permit the use of wood shingles or wood shake shingles and tile, slate, concrete or other permanent type roofing material but do not permit the use of composition roofing material, whether rated Class A, B or C, have in the past and if the covenant is not changed, will in the future result in subdivisions in which wood is the exclusive or predominate material used for roofing on new residences.

(*Id.*). Moreover, according to the Findings of Fact, the City was concerned that residents who occupy subdivisions with such restrictive covenants "have never had an opportunity to balance the risks and benefits of the required uses of such materials in their personal residences or their subdivisions, and to make their own informed judgment on such required use. In fact, many of these residents have not reviewed the restrictive covenants prior to acquiring the real estate." (*Id.*) The court notes that the City did not ban the use of rated or unrated wood roofs in Shawnee.

At the preliminary injunction hearing, Marty Mease, Al Faltermeier, and Bob Rebori, all of whom are residents of the SaddleBrooke Subdivision (the Residents), testified that the Restrictions, namely the ban of the use of asphalt roofing materials, were important in their decision to purchase their property in SaddleBrooke.

The Residents further testified that they had knowledge of the Restrictions prior to moving to SaddleBrooke; they found asphalt roofs to be aesthetically displeasing in appearance; they believe that the allowance of asphalt roofs within the Subdivision would have a negative impact on their property values; they relied on the validity of the Restrictions in their decision to purchase their property; and that they would not have moved into the Subdivision had they known that asphalt would be allowed as a roofing material.

The SaddleBrooke Subdivision contains approximately 150 lots, with 129 residences having been constructed. One hundred nineteen of the residences have wood shake or shingle roofs, and eight have tile or concrete tile roofs. Two residences, constructed after passage of Ordinance No. 2625, have asphalt composition roofing material.

Roofing materials are rated for fire retardancy or resistance as either Class A, Class B or Class C, with Class A having the highest fire rating. Class A rated roofing materials are effective against severe fire exposure, while Class C rated roofing materials are effective against light fire exposure, and under such exposure is not readily flammable, affords a measure of fire protection to the roof deck, does not slip from position, and is not expected to produce flying brands. All asphalt shingles are rated Class A, Class B or Class C. All concrete tile and slate roofing systems are rated Class A. There was conflicting evidence presented at the hearing regarding wood roof ratings. However, for purposes of this opinion, the court presumes that wood shingles treated with fire-retardant chemicals are either Class B or Class C, and untreated wood shingles are non-rated. Non-rated roof coverings provide no protection against fire exposure and are readily flammable.

● **Standards**

A party seeking a preliminary injunction bears the burden of showing: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest." *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States,* 195 F.3d 1190, 1194 (10th Cir.1999). "If the plaintiff can establish that the latter three requirements tip strongly in his favor, the test is modified, and the plaintiff may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Davis v. Mineta,* 302 F.3d 1104, 1111 (10th Cir.2002) (quotation omitted). Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.,* 31 F.3d 1536, 1543 (10th Cir.1994).

● **Discussion**

● Irreparable Harm

A harm is irreparable if money damages are an inadequate remedy because of difficulty or uncertainty in their proof or calculation. *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1361 (10th Cir. 1990). Plaintiffs argue that, if the Ordinances are allowed to stand, the Ordinances will significantly impact plaintiffs' ability to maintain the integrity and conformity of the roofing materials on homes built on the remaining vacant lots in the SaddleBrooke subdivision. Moreover, plaintiffs contend that, even if they ulti-

mately obtain permanent relief, such relief will be meaningless without the preliminary injunction because houses with non-conforming roofs could be built before the court entered such relief.

The court concludes that plaintiffs have shown they will suffer irreparable injury unless an injunction is issued. Since passage of the Ordinances, two houses in the SaddleBrooke Subdivision have been constructed with asphalt composition roofing material. Considering that fact, the court agrees that houses with asphalt roofs likely would be constructed in SaddleBrooke pending final resolution of this matter. Further, plaintiffs' property values would diminish upon the construction of homes with asphalt roofs. One basis for passage of the Ordinances is the City's contention that asphalt shingles cost less than the options contained in the Restrictions. Installing a less costly building material in a home will add less value to that home and, since the Johnson County Appraiser determines property values with reference to other houses in a neighborhood, the materials other homeowners use on their exterior directly impacts the value of plaintiffs' home. Moreover, the court determines that it would be difficult to estimate the amount that plaintiffs' property values have been diminished if houses with asphalt roofs are constructed in SaddleBrooke. Accordingly, the court finds that plaintiffs have shown they will suffer irreparable injury absent the issuance of a preliminary injunction.

**Balance of Harms**

The court now turns to whether the threatened injury outweighs the harm that the preliminary injunction may cause the City. The City argues that it will suffer injury if it is enjoined by a court from effectuating valid ordinances . enacted by representatives of its people. *O Centro Espirita Beneficiente Uniao Vegetal v.* *Ashcroft,* 314 F.3d 463, 467 (10th Cir.2002) ("The government suffers irreparable injury when its criminal laws are enjoined without adequately considering the unique legislative findings in this field."). However, the City's argument presumes that the Ordinances are valid. If the court determines that the Ordinances were passed in violation of the Constitution, the City suffers no harm.

It appears to the court that the only tangible harm the City would suffer if the court entered a preliminary injunction is that more homes with wood roofs, and less homes with asphalt roofs, would be erected. However, the court finds significant the fact that wood roofing materials, even the unrated kind, meet the City's current residential building codes. In essence, an injunction would simply preserve the status quo, since the City currently allows its residents to use wood roofing materials. Thus, there is little harm to the City should this court issue an injunction.

As previously set forth, the threatened injury plaintiffs may suffer is diminished property values. As such, the court finds plaintiffs have established that the balance of harms weighs in their favor.

● **Public Interest**

Next, the court looks to whether the injunction, if issued, would adversely affect the public interest. Issuing a preliminary injunction would maintain SaddleBrooke's Restrictions. The enforcement of deed restrictions is favored by Kansas law. *Linn Valley Lakes Property Owners Ass'n v. Brockway,* 250 Kan. 169, 170, 824 P.2d 948, 950 ("The enforceability of restrictive covenants has its origin in common law and has long been recognized in the State of Kansas."). Moreover, an injunction would maintain the consistency of the SaddleBrooke Subdivision, which was the reason for the Restrictions in the first place. Moreover, the issuance of a prelim-

inary injunction would avoid the need for additional lawsuits against individuals who might attempt to install asphalt roofs on homes in SaddleBrooke while this litigation is pending. Finally, plaintiffs are asserting a constitutional violation. The public as a whole has an interest in protecting constitutional rights. *Adams v. Baker*, 919 F.Supp. 1496, 1505 (D.Kan. 1996). The court concludes that an injunction would not adversely affect the public interest.

• **Likelihood of Success**

Plaintiffs have established that the three requirements-irreparable harm, balance of harms, and public interest-tip in their favor. Thus, plaintiffs at this stage must show that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.

Plaintiffs contend that the City's passage of the Ordinances violated their constitutional rights pursuant to 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiffs must show the deprivation of a constitutional right by an entity acting under color of state law. *Staudinger v. Hoelscher, Inc.*, 166 F.Supp.2d 1335, 1343 (D.Kan.2001). There is no dispute that the City was acting under color of state law within the meaning of § 1983. The court therefore turns to whether plaintiffs were deprived of a constitutional right.

Plaintiffs claim that, by passing the Ordinances, the City violated (1) plaintiffs' right to contract under Article I, Section 10 of the United States Constitution, (2) plaintiffs' right to substantive due process under the Fourteenth Amendment to the United States Constitution, and (3) plaintiffs' right to prevent the government from taking their property for private purpose prohibited by the Fifth and Fourteenth Amendments to the United States Constitution. The court first addresses whether the City violated plaintiff's constitutional right to contract.

The Contract Clause states, "No State shall ... pass any ... Law impairing the Obligations of Contracts." U.S. Const., Art. I, § 10. The Contract Clause, however, is not to be read literally. In *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 240, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), the Court stated: "The Clause is not, however, the Draconian provision that its words might seem to imply. As the Court has recognized, 'literalism in the construction of the contract clause ... would make it destructive of the public interest by depriving the State of its prerogative of self-protection.'" (citing *W.B. Worthen Co. v. Thomas*, 292 U.S. 426, 433, 54 S.Ct. 816, 78 L.Ed. 1344 (1934)). Thus, the Contract Clause does not obliterate the police power of the state. *Id.* at 241, 98 S.Ct. 2716.

To determine whether a Contract Clause violation exists, the threshold question is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Id.* at 242, 98 S.Ct. 2716. As the severity of the impairment increases, so too does the level of scrutiny. *Id.* at 245, 98 S.Ct. 2716. The next question is whether the state has a "significant and legitimate public purpose behind the regulation." *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983). After a legitimate public purpose has been identified, the final step is to consider "whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Id.* at 412, 103 S.Ct. 697 (quoting *United States Trust Co. v. N.J.*, 431 U.S. 1, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).

Turning to the first question, the court determines that the Ordinances operate as an impairment on the plaintiffs' right to contract with the developer of Saddle-Brooke. However, "[m]inimal alteration of contractual obligations may end the inquiry at its first stage. Severe impairment, on the other hand, will push the inquiry to a careful examination of the nature and purpose of the state legislation." *Allied,* 438 U.S. at 245, 98 S.Ct. 2716.

In determining whether an impairment is substantial, the Fourth Circuit observed that "[t]he Supreme Court ... has provided little specific guidance as to what constitutes a 'substantial' contract impairment." *Baltimore Teachers Union v. Mayor and City Council of Baltimore,* 6 F.3d 1012, 1015 (4th Cir.1993). Nonetheless, the Fourth Circuit explained that the Supreme Court has "appeared to assume that an impairment is substantial at least where the right abridged was one that induced the parties to contract in the first place, or where the impaired right was one on which there had been reasonable and especial reliance." *Id.*

Most significant to the court is the fact that the Roofing Restriction is a key provision of the Restrictions as a whole, which is intended to run with the land, and upon which the homeowners in SaddleBrooke have relied since May of 1993. The Ordinances are retroactive, city-imposed roofing requirements which interfere with the SaddleBrooke residents' contractual rights upon which they relied in purchasing their homes and upon which they have relied for nearly a decade. Moreover, under Kansas law, "The right to enforce the dedication restrictions, which are conceded to have been of record, was vested in all persons owning property in the area covered by

the declaration and the common grantor." *Lohmeyer v. Bower,* 170 Kan. 442, 451, 227 P.2d 102, 109 (1951). This vested right, established by the contract between developer and the SaddleBrooke residents, is significantly impaired by the passage of the Ordinances.

Moreover, the Ordinances do not operate in an area typically subject to regulation at the time the Restrictions were filed, but instead invade an area not ordinarily subject to regulation by the City, *i.e.* the type of deed restrictions homeowners' associations can adopt. Thus, the Saddle-Brooke residents were justified in relying on their contractual rights. Also, the Ordinances do not temporarily alter the contractual relationships of those within its coverage; rather, the Ordinances permanently and immediately change those relationships by declaring SaddleBrooke's deed restrictions null, void, and contrary to public policy. Finally, the Ordinances impose a new obligation upon homeowners in SaddleBrooke that otherwise would not have existed—the obligation to amend their deed restrictions to contain compliant roofing regulations. Specifically, if either ordinance is upheld, plaintiffs will be required to obtain homeowners' and the developer's approval to amend their deed restrictions to include acceptable regulations that govern roofing materials. The court finds that the Ordinances substantially impair plaintiffs' contractual rights.

Because the court has concluded that the first threshold is met, the court next examines whether the Ordinances are supported by a significant and legitimate public purpose. The purported purposes behind enacting the Ordinances are to lessen an alleged threat to public safety from the increased risk of fire,[2] to save homeowners

**2.** Plaintiffs assert that, according to the transcripts of the city council meeting pertaining to passage of the first ordinance, there is no testimony regarding fire safety. Upon review

of those transcripts, the court agrees. However, in support of both the first and second ordinance, the stated legislative findings in-

money, to release homeowners from deed restrictions they may not have read when purchasing a home, and to provide homeowners choices regarding roofing materials.

Absent evidence that Shawnee homeowners are struggling financially as a result of roofing their homes with wood, tile, or slate, the court concludes that saving homeowners money on their roofs is not a legitimate public purpose. Moreover, there is nothing in the record about homeowners being somehow tricked into accepting deed restrictions which they have not read, so releasing homeowners from deed restrictions does not serve a public purpose. In fact, such a stated purpose is in contravention to Kansas law. *Linn Valley,* 250 Kan. at 171, 824 P.2d at 950 ("Restrictive covenants have long been recognized in Kansas and a person who takes real property with notice of restrictions upon it will not be permitted to act in violation thereof."). Additionally, providing homeowners with roofing choices is not a significant and legitimate public purpose without some sort of evidence that the limited roofing choices are somehow creating a monopoly in the marketplace.

The court considers the issue of fire safety. The court does not question that, as a general proposition, public safety is a significant and legitimate public purpose. Ordinances which regulate building structures to prevent the spread of fire are appropriate. Such ordinances protect citizens from injury and death and further reduce the expenditure of municipal resources associated with extinguishing fires. The court therefore presumes that the Ordinances in principal are based upon a significant and legitimate public purpose. However, even recognizing that the professed purpose of the Ordinances may be legitimate, the Court finds that the Ordi-

nances, as retroactively applied, go too far and are, therefore, neither reasonable nor appropriate to these goals.

The court recognizes that "there is some authority that the legislative prerogatives and methods used to implement [legitimate] goals should be given substantial deference by the courts." *Waste Connections of Kan., Inc. v. City of Bel Aire,* 191 F.Supp.2d 1238, 1252 (D.Kan.2002) (citing *Houlton Citizens' Coalition v. Town of Houlton,* 175 F.3d 178, 191 (1st Cir.1999)). However, this court does not believe that absolute deference to legislative judgment is required, nor even lawful, since courts of the United States do not abdicate decision of constitutional questions to the legislature. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 175–80, 2 L.Ed. 60 (1803). Rather, as stated in *Allied,* "[legislative] power has limits when its exercise effects substantial modifications of private contracts. Despite the customary deference courts give to state laws directed to social and economic problems, '[l]egislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption.'" *Allied,* 438 U.S. at 244, 98 S.Ct. 2716 (quoting *United States Trust,* 431 U.S. at 22, 97 S.Ct. 1505).

In the case at hand, the court concludes that the Ordinances exceed the legislative purpose behind their enactment. The Restrictions at issue allow for wood, tile, or slate roofs. Tile and slate are Class A roofing materials, which is the safest fire rating. Thus, stated as a term of homeowners' contract with the developer is the option of using Class A roofing materials. The Ordinances, which purportedly aim at eliminating unsafe wood roofs, declare null

clude fire safety as a concern. As such, for purposes of this opinion, the court will con-

sider fire safety as a stated reason for passage of the Ordinances.

and void contracts that allow safe alternatives to wood.

The City's only rationale in enacting such broad sweeping legislation is that, because tile and slate are more costly, homeowners will predominantly choose wood. While this may have to date occurred in SaddleBrooke, the court concludes that the Ordinances cannot pass constitutional muster based upon this hypothesis. The court is persuaded by the rationale set forth in *Hoye v. Shepherds Glen Land Co., Inc.,* 753 S.W.2d 226, 228 (Tex.App.1988). In *Hoye,* the city ordinance at issue stated: "To the extent that a deed restriction applicable to a structure on residential property *requires* the use of a wood shingle roof, the restriction is void." Tex. Prop.Code Ann. § 5.025 (emphasis added). The deed restriction in question stated, "All roofs shall be wood shingle, slate or other permanent type." The plaintiffs' in *Hoye* were homeowners, who argued that the only practical economic alternative for homeowners under the restrictive covenant was to use wood shingled roofs. The plaintiffs argued that, because the effect of the covenant is to allow only wood shingled roofs, the covenant is void under the code. The court reasoned as follows:

> The practical disadvantages of other alternatives to wood shingles for a structure of a particular design do not establish that the restriction in question is void. *The fact that 51 of the 55 houses in the subdivision have wood shingle roofs is not proof as a matter of law that the practical effect of enforcing the covenant is to force homebuilders to use wood shingle roofs.* Even if this Court were to strike out the portion of the

covenant dealing with wood shingles, the Hoyes can still use "slate or other permanent type" of materials.

*Hoye,* 753 S.W.2d at 228 (internal citation omitted) (emphasis added). Similarly, in this case, each and every SaddleBrooke homeowner can choose tile or slate; indeed, some of them have made that choice. But the court cannot accept the City's intrusion on plaintiffs' contract rights based upon the City's speculative conclusion that such deed restrictions will "result in subdivisions in which wood is the exclusive or predominate material used for roofing on new residences." (Ordinance No. 2655 Findings of Fact).

■ If wood shingles, wood shake shingles and other roofing materials rated less than Class C truly "present a substantial threat to public safety," the City should pass an ordinance specifically directed at keeping those roofs from being installed on homes built within the City's borders. Simply put, if the problem is wood shingles, the City should ban them. Another alternative would be to enact an ordinance similar to the Texas code, which would void deed restrictions that *require* the use of wood shingles. These types of ordinances would be directed specifically at the use of wood shingles and would, therefore, be of a character appropriate to the City's stated public purpose. As currently drafted, the Ordinances are all-encompassing, affecting conduct which cannot be justified by the City's stated purpose. As such, the intrusion on plaintiffs' right to contract is unconstitutional.[3] The court concludes that plaintiffs have met their burden for a motion for a preliminary injunction.

---

**3.** Because the court has concluded that the Ordinances violate the Contract Clause, the court need not decide whether the City violated plaintiffs' right to substantive due process under the Fourteenth Amendment or plaintiffs' right to prevent the government from taking their property for private purpose prohibited by the Fifth and Fourteenth Amendments.

IT IS THEREFORE ORDERED that plaintiffs' Motion for Preliminary Injunction (Doc. 4) is granted. The City is hereby preliminarily enjoined from enforcing Ordinance 2625 and Ordinance 2655 until further order of this court.