**Rai BARNETT, the natural mother of Courtney Barnett, et al., Plaintiffs,**

v.

**TEXAS WRESTLING ASSOCIATION, a/k/a Texas Interscholastic Wrestling Association, et al., Defendants.**

**Civil Action No. 3:96–CV–3425–G.**

United States District Court, N.D. Texas, Dallas Division.

Aug. 3, 1998.

---

Anthony Hume, Law Office of Anthony Hume, Dallas, TX, Carrie Beth Sperling, Law Office of Carrie Sperling, Dallas, TX, for Rai Barnett, Karen L. Herring.

Michael Lawrence Williams, Galilee Group, Arlington, TX, for Texas Wrestling Association, Jim Giunta, Texas Wrestling Officials Association, John Rizzuti.

William Lowell Banowsky, Mia M. Martin, David Michael Pryor, Thompson & Knight, Dallas, TX, for Board of Trustees of the Highland Park Independent School District, John Connolly, Carolyn Bukhair.

James W. Deatherage, Power & Deatherage, Irving, TX, Thomas Phillip Brandt, Fanning Harper & Martinson, Preston Commons West, Dallas, TX, for Board of Trustees of the Irving Independent School District, Jack Singley.

Mia M. Martin, Thompson & Knight, Dallas, TX for Board of Trustees of the Richardson Independent School District.

### MEMORANDUM ORDER

FISH, District Judge.

Before the court are the first, second, and supplemental motions for summary judgment of the defendant Irving Independent School District ("IISD")[1] and the supplemental summary judgment brief of the defendants Texas Interscholastic Wrestling Association ("TIWA")[2] and Texas Wrestling Officials Association ("TWOA,"[3] collectively with the IISD and TIWA, "defendants").[4] For the following reasons, the defendants' motions for summary judgment are granted in part and denied in part.

### I. BACKGROUND

Rai Barnett and Karen Herring bring this action on behalf of their minor daughters Courtney Barnett ("Courtney"), and Melony Monahan ("Melony") (collectively, "plaintiffs"). The plaintiffs seek injunctive relief, compensatory and punitive damages, and attorneys' fees for alleged state and federal equal protection violations and for violations of state and federal statutory prohibitions against discrimination on the basis of sex in education. See Plaintiffs' First Amended Original Complaint and Request for Injunctive Relief ("Complaint") at 5, 19, 23.

The facts presented to the court are largely undisputed. During the 1996–97 academic year, Courtney and Melony were juniors in the Arlington Independent School District, attending Martin High School ("MHS") and Sam Houston High School ("SHHS"), respectively. Complaint at 2, 7. Each was a member of her school's varsity wrestling team. Id. TIWA is an unincorporated association organized to promote and regulate high school interscholastic wrestling in Texas. Id. at 2, 5. TIWA is supported largely by the annual membership fees paid by participating schools. See Texas Interscholastic Wrestling Association 1997 Legislative Council Meeting at 1, attached as Exhibit 7 to Plaintiffs' Brief in Support of Motion for Rule 56(f) Continuance and Response to Defendants' (IISD and Jack Singley) Motion for Summary Judgment and Second Motion for Summary Judgment ("Plaintiffs' Brief I"); Declaration of James Hyden at 2, attached as Exhibit 6 to Plaintiffs' Brief I. The three high schools of the IISD were members of TIWA during the 1996–97 academic year. Affidavit of Jack Singley ("Singley Affidavit") at 1, attached as Exhibit 2 to Defendants Irving Independent School District's and Jack Singley's Motion for Summary Judgment ("IISD Motion I"). TWOA is an unincorporated association of referees who officiate events sanctioned by TIWA. Complaint at 3.

In November of 1996, the MHS and SHHS wrestling teams attended the North Texas Open wrestling tournament hosted by MacArthur High School in the IISD. Id. at 9–10, 10–11. Courtney and Melony requested, but were denied, permission to participate in mixed-gender matches at the tournament. Id.; Declaration of Melony Monahan at 1–2, attached as Exhibit 2 to Plaintiffs' Brief I. The tournament was sanctioned by TIWA and officiated by members of TWOA. See Complaint at 9, 10–11.

In December of 1996, the plaintiffs brought this action claiming, inter alia, that their rights were violated when the IISD and TWOA officials refused to let them wrestle

---

**1.** Jack Singley ("Singley"), the superintendent of the IISD, has been sued in his official capacity. It is well settled, however, that a suit against a public official in his official capacity is really a suit against the governmental entity. E.g., Kentucky v. Graham, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Therefore, the court will address the plaintiffs' claims against Singley together with those against the IISD.

**2.** Jim Guinta ("Guinta"), the executive director of the TIWA, is also named in his official capacity. As with Singley and the IISD, the court will address the plaintiffs' claims against Guinta and the TIWA together.

**3.** John Rizzuti, president of the TWOA, like Singley and Guinta is named as a defendant in his official capacity. As with the other officials, the court will address the claims against Rizzuti and the TWOA together.

**4.** The plaintiffs originally sought relief against the Highland Park and Richardson Independent School Districts as well. Because these claims have been settled, the Highland Park and Richardson districts, and their respective superintendents, are no longer parties to this action. See Order of Dismissal with Prejudice and Final Judgment (June 22, 1998).

pursuant to a TIWA rule forbidding inter-gender matches (the "rule"). *See generally* Complaint. In January of 1997, the plaintiffs requested that the court temporarily restrain the defendants from enforcing the rule. Following a hearing, the court denied the plaintiffs' request for a TRO and ordered the parties to submit affidavits and/or depositions addressing the plaintiffs' request for a temporary injunction. In early February of 1997, the defendants moved for an order dismissing the plaintiffs' complaint for failure to state a claim upon which relief can be granted. Shortly thereafter, the court denied the plaintiffs' request for a preliminary injunction. In June of 1997, the court also denied the defendants' motions to dismiss.

In early August of 1997, the IISD filed the first of its motions for summary judgment. *See generally* IISD Motion I. In this motion, the IISD assert that the plaintiffs' 14th Amendment claims, brought under 42 U.S.C. § 1983, failed as a matter of law because the IISD had no policy of discrimination. *Id.* at 4–12. Later that month, the IISD filed its second summary judgment motion. *See generally* Defendants Irving Independent School District's and Jack Singley's Second Motion for summary Judgment ("IISD Motion II"). This second motion attacks the plaintiffs' claims for punitive damages under § 1983 and for compensatory and punitive damages under the Texas Constitution and Texas Education Code. *Id.* at 7–9. The plaintiffs responded to the IISD's motions and requested a Rule 56(f) continuance. *See generally* Plaintiffs' Brief I.

In January of 1998, the court ordered the defendants to submit additional summary judgment briefs addressing the issue of whether the plaintiffs had suffered a deprivation of their right to equal protection at all, an issue theretofore unaddressed by the parties.[5] Order (Jan. 20, 1998). Rather than address the issue as ordered, however, the IISD attempted to analogize this case to recent Supreme Court decisions involving assisted suicide and renewed the "no policy" arguments of its first motion for summary

judgment. *See generally* Defendants Irving ISD and Jack Singley's Summary Judgment Brief (Feb. 3, 1998); Defendants Irving ISD and Jack Singley's Supplemental Summary Judgment Brief (Feb. 6, 1998). The brief filed by TIWA and TWOA also avoided the equal protection issue, arguing instead that they did not act "under color of state law" as required by § 1983 and that the plaintiffs' claims against them are moot. Defendants' Brief in Support of Summary Judgment ("TIWA Brief") at 3–5. The plaintiffs responded, the IISD replied, and the motions are now ripe for decision.

## II. *ANALYSIS*

### A. *The Defendants' Motions for Summary Judgment*

#### 1. *Evidentiary Burdens*

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The parties moving for summary judgment make such a showing by informing the court of the basis of their motion and by identifying the portions of the record which reveal that there are no genuine material fact issues to support the nonmovants' case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R.Civ.P. 56(c).

Once the movants make this showing, the nonmovants may not rest on the allegations in their pleadings. *Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.,* 847

---

**5.** This order, raising new issues and delaying by several months the court's consideration of the motions for summary judgment, effectively grant-

ed the plaintiffs' motion for Rule 56(f) continuance.

F.2d 186, 199 (5th Cir.), *cert. denied,* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988). Rather, they must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. To carry this burden, the "opponent must do more than simply show ... some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmovants must present evidence sufficient to support a resolution of the factual issue in their favor. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

While all of the evidence must be viewed in a light most favorable to the plaintiffs as the motions' opponents, *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy their summary judgment burden. *Marshall v. East Carroll Parish Hospital Service District,* 134 F.3d 319, 324 (5th Cir.1998); *Little v. Liquid Air Corporation,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment in favor of the defendants is proper if, after adequate time for discovery, the plaintiffs fail to establish the existence of an element essential to their case and as to which they will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

### 2. *The Court's Entry of Summary Judgment Sua Sponte*

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte* ...." *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548. When a court grants summary judgment *sua sponte,* the parties must receive notice as provided by Federal Rule of Civil Procedure 56(c). *Balogun v. Immigration and Naturalization Service,* 9 F.3d 347, 352 (5th Cir.1993); see also *Celotex,* 477 U.S. at 326, 106 S.Ct. 2548 (*sua sponte* summary judgment proper "so long as the losing party was on notice that she had to come forward with all of her evidence."); *Daniels v. Morris,* 746 F.2d 271, 275–76 (5th Cir.1984) (district court did not err in granting summary judgment on the basis of facts not specifically urged by movant as long as the opponent had been given ample opportunity to respond to the motion). Under this rule, the court may not render summary judgment until ten days after the parties receive notice of its intention to do so. *Isquith,* 847 F.2d at 195–96.

### B. *Plaintiffs' Title IX Claims*

■ Title IX of the Education Amendments of 1972 ("Title XI"), 20 U.S.C. § 1681 *et seq.,* generally prohibits discrimination on the basis of sex in education programs or activities receiving federal financial assistance. Title IX does not expressly authorize suit by those aggrieved by violations of its provisions. See *id.* § 1682 (providing for federal administrative enforcement). However, the Supreme Court has recognized an implied private right of action under Title IX violations. *Cannon v. University of Chicago,* 441 U.S. 677, 688–89, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (recognizing cause of action); *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (relief may include monetary damages).

None of the summary judgment pleadings filed by the parties in this case have explicitly addressed the defendants' Title IX liability. But on the facts presented, the court concludes that the plaintiffs may not, as a matter of law, recover under Title IX.

The United States Department of Education and the United States Department of Health and Human Services have promulgated substantially identical regulations interpreting Title IX. *Compare, e.g.,* 34 C.F.R. § 106.41 *with* 45 C.F.R. § 86.41. These regulations expressly permit schools to sponsor sexually segregated teams "where selection for such teams is based upon competitive skill or the activity involved is a contact sport." 34 C.F.R. § 106.41(b); 45 C.F.R. § 86.41(b). Wrestling, as recognized by the regulations, is the quintessential contact sport. *See* 34 C.F.R. § 106.41(b); 45 C.F.R. § 86.41(b). The Fifth Circuit and other circuit courts of appeals have granted the regu-

lations appreciable deference. See, e.g., *Rowinsky v. Bryan Independent School District*, 80 F.3d 1006, 1014 n. 20 (5th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 165, 136 L.Ed.2d 108 (1996); *Cohen v. Brown University*, 991 F.2d 888, 895 (1st Cir.1993). Based on these regulations, the court concludes that the defendants were free to exclude Courtney and Melony from participation in boys wrestling without fear of Title IX liability.

### C. *Plaintiffs' 14th Amendment Claims*

■ The lack of a Title IX violation, however, does not mean that the defendants' actions were in all respects lawful. *See, e.g., Mississippi University for Women v. Hogan*, 458 U.S. 718, 732, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (although Title IX expressly permitted traditionally single-sex university, sexual segregation at the university violated 14th Amendment). Section One of the Fourteenth Amendment to the Constitution provides in part: "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." When, as alleged here, a policy of a state actor expressly discriminates among persons on the basis of their gender, the policy, is subject to constitutional scrutiny. *Reed v. Reed*, 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

■ "Parties who seek to defend gender-based government action must demonstrate an 'exceedingly persuasive justification' for that action." *United States v. Virginia*, 518 U.S. 515, 531, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). This burden is met "by showing at least that the classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Hogan*, 458 U.S. at 724, 102 S.Ct. 3331 (internal quotation marks omitted); accord *J.E.B. v. Alabama*, 511 U.S. 127, 136–37, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

■ Section 1983 of Title 42 of the United States Code provides the statutory vehicle for addressing alleged violations of Fourteenth Amendment rights. See *Burns–Toole v. Byrne*, 11 F.3d 1270, 1273 n. 3 (5th Cir.), *cert. denied*, 512 U.S. 1207, 114 S.Ct. 2680, 129 L.Ed.2d 814 (1994). This statute creates a private right of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the constitution and laws of the United States. 42 U.S.C. § 1983. Municipalities and other local governmental bodies, as well as individuals, qualify as "persons" within the meaning of § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 689–90, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ Municipalities, however, may not be held vicariously liable under § 1983 for the wrongdoing of others. *Id.* at 691, 98 S.Ct. 2018. Rather, a municipality may be held liable only when the execution of a municipal policy causes the injury. *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Monell*, 436 U.S. at 694, 98 S.Ct. 2018. A municipal "policy" need not be written or have received formal approval to be actionable. *Monell*, 436 U.S. at 690–691, 98 S.Ct. 2018. It must, however, be so permanent and well settled " 'as to constitute a "custom or usage" with the force of law,' " *id.* (quoting *Adickes*, 398 U.S. at 167–68, 90 S.Ct. 1598); see also *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992), and must result from the decisions of a "duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality," *Brown*, 117 S.Ct. at 1388, 117 S.Ct. 1382; see also *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).

### 1. *Compensatory Damages*

■ As mentioned above, the defendants' summary judgment motions and briefs fail to address the substance of the plaintiffs' constitutional claims—the refusal to permit mixed-gender wrestling. The court finds this failure particularly surprising because it is far from clear that the refusal to sanction a mixed-gender contact sport violates the Fourteenth Amendment. Compare *O'Connor v. Board of Education of School District 23*, 449 U.S. 1301, 1307–08, 101 S.Ct. 72, 66 L.Ed.2d 179 (1980) (Stevens, Circuit Justice) (refusing to lift court of appeals' stay of

district court's preliminary injunction requiring school to permit girl to try out for boys' basketball); *Williams v. School District of Bethlehem,* 998 F.2d 168, 177, 180 (3d Cir. 1993) (reversing summary judgment for plaintiff on Title IX claim and refusing to address equal protection claim in exclusion of boy from girls' field hockey), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994); *Clark v. Arizona Interscholastic Association,* 695 F.2d 1126, 1131 (9th Cir.1982) (permitting exclusion of boys from girls' volleyball team), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed.2d 90 (1983); *O'Connor v. Board of Education of School District No. 23,* 645 F.2d 578, 582 (7th Cir.) ("*O'Connor II* ") (reversing grant of preliminary injunction requiring school to permit girl to try out for boys' basketball), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981); *O'Connor v. Board of Education of School District 23,* 545 F.Supp. 376, 381 (N.D.Ill. 1982) (granting summary judgment for defendants on remand from *O'Connor II* ); *Lafler v. Athletic Board of Control,* 536 F.Supp. 104, 108 (W.D.Mich.1982) (dissolving TRO which permitted mixed-gender boxing) with *Adams v. Baker,* 919 F.Supp. 1496, 1505 (D.Kan.1996) (granting TRO against enforcement of rule prohibiting mixed gender wrestling); *Saint v. Nebraska School Activities Association,* 684 F.Supp. 626, 630 (D.Neb. 1988) (same); *Lantz v. Ambach,* 620 F.Supp. 663, 666 (S.D.N.Y.1985) (requiring state officials to permit girl to try out for boys' football); *Force v. Pierce City R–VI School District,* 570 F.Supp. 1020, 1031–32 (W.D.Mo. 1983) (same); see also *Hoover v. Meiklejohn,* 430 F.Supp. 164, 172 (D.Colo.1977) (athletic association must either discontinue soccer, permit mixed-gender soccer, or establish substantially comparable boys' and girls' programs). Instead, the defendants attempt to rend the plaintiffs' claims for compensatory damages with a procedural whipsaw: the IISD, which obviously is a state actor, insists that it had no policy of discrimination, while the TIWA and TWOA, which admit to discriminating, insist that they did not act under color of state law. *See* IISD Motion I at 4–12; TIWA Brief at 3–4.

Upon review of the pleadings and evidence on file, the court finds that the plaintiffs have presented an issue of material fact on both points of contention. First, IISD schools voluntarily joined TIWA and employed TWOA officials; they agreed to follow the associations' rules; and they enforced those rules at school sponsored events. Although Singley claims that the IISD board was ignorant of any discrimination and although the IISD board later adopted a formal anti-discrimination policy, *see* Singley Affidavit at 1–2, the long standing relationship between the TIWA, TWOA, and IISD schools raises an issue of fact concerning whether the IISD had informally adopted the associations' formal policy of discrimination. See, e.g., *Bennett,* 728 F.2d at 767 (a "policy" includes a pattern of conduct in actual practice). Second, athletic associations whose "membership consist[s] entirely of institutions located within the same State, many of them public institutions created by the same sovereign," are state actors for the purposes of § 1983; and the Fourteenth Amendment. *National Collegiate Athletic Association v. Tarkanian,* 488 U.S. 179, 193 n. 13, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988); see also *Clark v. Arizona Interscholastic Association,* 695 F.2d at 1128; *Louisiana High School Athletic Association v. St. Augustine High School,* 396 F.2d 224, 227 (5th Cir.1968); *Brewer v. Purvis,* 816 F.Supp. 1560, 1575 (M.D.Ga.1993), *aff'd,* 44 F.3d 1008 (11th Cir.) (table), *cert. denied,* 514 U.S. 1111, 115 S.Ct. 1965, 131 L.Ed.2d 855 (1995). Thus, the policies of TIWA and TWOA are "state action" subject to constitutional scrutiny. See *Tarkanian,* 488 U.S. at 193 n. 13, 109 S.Ct. 454. Because the plaintiffs have presented evidence from which a reasonable jury could find in their favor on these issues, the plaintiffs' claims for compensatory damages under § 1983 should proceed to trial.

### 2. *Punitive Damages*

The IISD also seeks a specific determination that the plaintiffs' claims for punitive damages fail as a matter of law. IISD Motion II at 7–8 (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). The plaintiffs have not contested the IISD's position. *See generally* Plaintiffs' Brief 1. Upon review of the pleadings and evidence on file, the court con-

cludes that the plaintiffs' claims for punitive damages under § 1983 fail as a matter of law and will order summary judgment according-ly. See *City of Newport,* 453 U.S. at 271, 101 S.Ct. 2748.

### 3. *Injunctive Relief*

■ Federal courts are courts of limit-ed jurisdiction. *Owen Equipment and Erec-tion Company v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), A feder-al court may exercise jurisdiction only as expressly provided by the Constitution and laws of the United States. *See* U.S. Const. art. III § 2. Section 1331 of Title 28 of the United States Code provides the federal dis-trict courts with jurisdiction over claims aris-ing under the Constitution, laws, or treaties of the United States. However, this jurisdic-tion is limited to the resolution of actual cases and controversies. See, e.g., *Arizo-nans for Official English v. Arizona,* 520 U.S. 43, ——, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997). Thus, to maintain a suit in federal court, a plaintiff must show:

> [1] that [s]he personally has suffered some actual or threatened injury as a re-sult of the putatively illegal conduct of the defendant ...
>
> [2] that the injury "fairly can be traced to the challenged action" and
>
> [3] [that the injury] "is likely to be re-dressed by, a favorable decision."

*Cramer v. Skinner,* 931 F.2d 1020, 1024 (5th Cir.) (quoting *Valley Forge Christian College v. Americans for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)), *cert. denied,* 502 U.S. 907, 112 S.Ct. 298, 116 L.Ed.2d 242 (1991).

Here, the defendants argue that intervening events have rendered moot the plaintiffs' claims for injunctive relief. Defendants Irv-ing ISD and Jack Singley's Summary Judg-ment Brief (Feb. 3, 1998) at 9; TIWA Brief at 5. The plaintiffs have failed to respond to this allegation. *See generally* Plaintiffs' Re-sponse to Defendants Irving ISD and Jack Singley's Motion for Summary Judgment and Supplemental Motion for Summary Judg-ment; Plaintiffs' Response to TIWA Defen-dants' and TWOA Defendants' Motion for Summary Judgment.

Upon review of the pleadings and evidence on file, the court agrees with the defendants. It is clear that an order of prospective equi-table relief is unlikely to redress any existing or threatened injury to the plaintiffs. First, the IISD severed its ties with TIWA and TWOA following the 1996–97 school year and adopted a formal policy of non-discrimina-tion. *See* Memorandum from Jack Singley, attached as Exhibit 1 to Defendant Irving ISD's Reply to Plaintiffs' Response to Its Motions for Summary Judgment and Its Re-sponse to Plaintiffs' Rule 56(f) Motion for Continuance and Brief in Support; Resolu-tion No. 96–97–13 at 3, attached as Exhibit 1 to IISD Motion I. Second, the University Interscholastic League has replaced the TIWA as the organization responsible for managing Texas high school wrestling. TIWA Brief at 2; *see also* TIWA Judicial Committee Meeting # 14 at 9, attached as Exhibit 8 to Plaintiffs' Brief I. Third, the TWOA has disbanded. Complaint at 8–9; Defendants [sic] Original Answer to Plain-tiffs' First Amended Complaint and Request for Injunctive Relief at 6. Fourth, the plain-tiffs have graduated from high school, there-by ending their varsity wrestling careers. TIWA Brief at 5; *see also* Complaint at 7 (alleging that Courtney and Melony were juniors in January of 1997). Accordingly, the plaintiffs' claims for injunctive relief are dis-missed as moot. Cf. *Habetz v. Louisiana High School Athletic Association,* 842 F.2d 136, 137–38 (5th Cir.1988) (finding that volun-tary amendment of association rules ren-dered allegation of discrimination moot).

### D. *Plaintiffs' Texas Education Code Claims*

The defendants also seek summary judg-ment on the plaintiffs' claims brought under § 33.082 of the Texas Education Code. IISD Motion II at 8–9. This statute prohibits school districts from sponsoring, or sanction-ing extracurricular activities at athletic clubs which discriminate on the basis of race, color, religion, creed, national origin, or sex. Tex. Education Code Ann. § 33.082(a) (Vernon 1996). The defendants seek summary judg-ment based on sovereign immunity, the ab-

sence of an express private right of action,[6] and the Plaintiffs' failure to exhaust administrative remedies. IISD Motion II at 9. Moreover, the defendants argue that § 33.082, by its own terms, does not apply to the facts alleged in this case. *Id.* The plaintiffs' have failed to contest summary adjudication of this claim. For the reasons set forth by the defendants, the court concludes that the defendants are entitled, as a matter of law, to judgment on this claim.

### E. *Plaintiffs' Claims Under the Texas Constitution*

Finally, the defendants aver that they cannot be held liable for damages under the Texas Constitution. IISD Motion II at 8 (citing *City of Beaumont v. Bouillion,* 896 S.W.2d 143 (Tex.1995)). The plaintiffs do not contest this assertion. *See* Plaintiffs' Brief I at 18–19. Instead, they note that *Bouillion,* 896 S.W.2d at 149, expressly recognized a right to pursue injunctive relief, as they have done, directly under the Texas Constitution. Plaintiffs' Brief I at 18–19. But, as discussed above, the plaintiffs' claims for injunctive relief are now moot. *See supra* Part II.C.3. Accordingly, summary judgment in favor of the defendants on the plaintiffs' claims brought directly under the Texas Constitution is appropriate. See *University of Texas System v. Courtney,* 946 S.W.2d 464, 469 (Tex.App.—Fort Worth 1997, writ denied).

### III. *CONCLUSION*

For the foregoing reasons, the defendants' motions for summary judgment are **GRANTED,** except as to the plaintiffs claims for compensatory damages under 42 U.S.C. § 1983. The defendants' motions for summary judgment on the plaintiffs' claims for compensatory damages under § 1983 are **DENIED.**

**SO ORDERED.**

---

**6.** This statute does not expressly provide for the private enforcement of its provisions. *See* Tex. Education Code Ann. § 33.082(a) (Vernon 1996).